THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ANGELA CAMPBELL,

                Plaintiff,

      v.

RADIUS GLOBAL SOLUTIONS, LLC, formerly known as NORTHLAND GROUP, a Minnesota Limited Liability Company,

                Defendant.

NO. 3:20-cv-06134-RAJ

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR DEBT COLLECTION PRACTICES ACT**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1.1    Medical bills ruin too many Americans' financial lives. According to the Consumer Financial Protection Burau, nearly one in five credit reports contain one or more medical debt collection tradelines.[1] Even relatively small medical bills can have devastating consequences for consumers who often have difficulty tracking down who they allegedly owe for what medical care, especially after the bills are assigned to a collection agency.

1.2    In 2019, the Washington State Legislature responded to the growing crisis caused by aggressive collection of medical debts with a series of reforms. Among other things, a collection agency collecting hospital debt must advise consumers of their potential eligibility for

---

[1] CFPB, Consumer credit reports: A study of medical and non-medical collections at 4 (Dec. 2014), available at https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

financial assistance, known as charity care, in their initial letters seeking to collect on alleged debts for hospital care. RCW 19.16.250(29). Collection agencies must also tell consumers that they are entitled to specific information about alleged debts for healthcare. RCW 19.16.250(28).

1.3    In January 2020, Radius Global Solutions sent Angela Campbell a collection letter seeking to collect on a bill from St. Joseph Medical Center in Tacoma that failed to make the required disclosure about charity care. St. Joseph recently entered into a multimillion-dollar settlement with Washington State Attorney General in order to resolve claims that it systemically failed to comply with charity care requirements.

1.4    After Ms. Campbell filed a class action complaint in Pierce County Superior Court, Radius removed the action to this Court, asserting that it sent letters like the one it sent Ms. Campbell to "over 10,00 Washington residents." Dkt. No. 1 at ¶ 22.

## II. PARTIES

2.1    Plaintiff, ANGELA CAMPBELL is a resident of Washington State.

2.2    The medical services Plaintiff obtained from St. Joseph Medical Center were primarily for personal, family, or household purposes.

2.3    Defendant alleges that Plaintiff failed to pay for services.

2.4    Plaintiff is therefore a "debtor" as defined by the Collection Agency Act (CAA), and a "person" as defined by the Consumer Protection Act (CPA), and Plaintiff acted as a "debtor" and "person" at all times relevant to this litigation.

2.5    Defendant, RADIUS GLOBAL SOLUTIONS, LLC, Formerly Known As NORTHLAND GROUP, a Minnesota Limited Liability Company, (hereinafter "Radius"), is a collection agency and a business which regularly collects defaulted accounts originally owed to others.

2.6    The principal purpose of Radius's business is the collection of third-party debts originally owed to others.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 2
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2.7    Radius is a licensed collection agency and conducts business in Washington State under UBI No. 601 617 325.

2.8    Radius is therefore a "collection agency" as defined by the CAA, and a person under the CPA, and Defendant acted as such at all times relevant to this complaint.

## III.  JURISDICTION AND VENUE

3.1    Jurisdiction and venue were proper in Pierce County Superior Court where Plaintiff filed this action. All acts at issue and described herein occurred in Pierce County, Washington and Radius has engaged in substantial business contacts in Pierce County, Washington. RCW 4.12.020; 4.12.025; 4.28.180; 4.28.185; and 7.40.010.

3.2    Radius invoked the jurisdiction of this Court under 28 U.S.C. § 1332(a) and (d). Upon any finding that this Court lacks subject matter jurisdiction or that Plaintiff lacks Article III standing, this Court must remand the case to state court rather than dismiss it.

## IV.  STATUTORY BACKGROUND

4.1    In March 2019, the Washington State Legislature amended Washington's Collection Agency Act to provide additional protections to patients subject to medical and hospital debt collections.

4.2    As of July 28, 2019, Washington's Collection Agency Act requires collection agencies collecting medical debt to provide consumers with certain information about the alleged debts:

> If the claim involves medical debt: (a) Fail to include, with the first written notice to the debtor, a statement that informs the debtor of the debtor's right to request the original account number or redacted original account number assigned to the debt, the date of the last payment, and an itemized statement as provided in (b) of this subsection (28); (b)(i) Fail to provide to the debtor, upon written or oral request by the debtor for more information than is contained in a general balance due letter, an itemized statement free of charge. Unless and until the licensee provides the itemized statement, the licensee must cease all collection efforts. The itemized statement must include: (A) The name and address of the medical creditor; (B) The date, dates, or date range of service; (C)

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 3
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

The health care services provided to the patient as indicated by the health care provider in a statement provided to the licensee; (D) The amount of principal for any medical debt or debts incurred; (E) Any adjustment to the bill, such as negotiated insurance rates or other discounts; (F) The amount of any payments received, whether from the patient or any other party; (G) Any interest or fees; and (H) Whether the patient was found eligible for charity care or other reductions and, if so, the amount due after all charity care and other reductions have been applied to the itemized statement; (ii) In the event the debtor has entered into a voluntary payment agreement, the debtor shall give notice if he or she wants the payment plan discontinued. If no notice is given, the payment arrangement may continue. (iii) Properly executed postjudgment writs, including writs of garnishment and execution, are not required to be ceased and second or subsequent requests for information already provided do not require the cessation of collection efforts; (c) Report adverse information to consumer credit reporting agencies or credit bureaus until at least one hundred eighty days after the original obligation was received by the licensee for collection or by assignment.

RCW 19.16.250(28).

4.3    Effective July 28, 2019, the Collection Agency Act prohibits collection agencies from engaging in the following conduct:

If the claim involves hospital debt: (a) Fail to include, with the first written notice to the debtor, a notice that the debtor may be eligible for charity care from the hospital, together with the contact information for the hospital; (b) Collect or attempt to collect a claim related to hospital debt during the pendency of an application for charity care sponsorship or an appeal from a final determination of charity care sponsorship status. However, this prohibition is only applicable if the licensee has received notice of the pendency of the application or appeal.

RCW 19.16.250(29).

## V.  ST. JOSEPH'S HISTORY OF NONCOMPLIACE WITH CHARITY CARE REQUIREMENTS

5.1    On April 29, 2019, St. Joseph entered a multimillion-dollar Consent Decree with the Washington State Attorney General, to resolve *State of Washington v. Franciscan Health*

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 4
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*System d/b/a Chi-Franciscan Health d/b/a St. Joseph Medical Center*, Pierce County Superior Court Cause No. 17-2-10901-2. See **EX. B**.

5.2     The Consent Decree resolved St. Joseph medical accounts incurred between January 1, 2012 and July 1, 2017. *Id*. at p. 10.

5.3     Pursuant to the Consent Decree, ST JOSEPH MEDICAL CENTER discharged $1,041.35 of Plaintiff's medical debts. See EX. C (redacted Attorney General letter to Plaintiff stating in pertinent part: "Good news – you no longer owe a debt!...As a result, you no longer owe $1,041.35 on…to St. Joseph Medical Center.")

### VI.  FACTUAL ALLEGATIONS RELEVANT TO PLAINTIFF

6.1     On September 18, 2017, Plaintiff obtained medical services from "ST JOSEPH MEDICAL CENTER PARENT LOCATION."

6.2     St. Joseph billed Plaintiff $77.59 for these services.

6.3     Plaintiff qualified for Washington State's charity care program.

6.4     St. Joseph's did not offer Plaintiff charity care or tell her she could apply for charity care.

6.5     On November 14, 2017, Plaintiff again obtained medical services from "ST JOSEPH MEDICAL CENTER PARENT LOCATION."

6.6     St. Joseph billed Plaintiff $77.59 for these services.

6.7     Plaintiff qualified for Washington State's charity care program.

6.8     St. Joseph did not offer Plaintiff charity care or tell her she could apply for charity care.

6.9     Plaintiff has received healthcare at St. Joseph Medical Center on numerous occasions.

6.10    On January 1, 2020, despite the requirements of RCW 19.16.250(28) and 19.16.250(29), and despite the Consent Decree evidencing a years' long history of problems associated with St. Joseph's handling of charity care accounts, Radius mailed Plaintiff a

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 5
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1  collection letter demanding payment for the September 18, 2017 and November 14, 2017

2  accounts listed above that failed to provide the information required by the Collection Agency

3  Act. *See* **EX. A** (redacted collection letter).

4      6.11    The January 1, 2020 collection letter was the first written communication Radius

5  mailed to Plaintiff.

6      6.12    Radius's first collection letter *did not* include a notice that Plaintiff may be

7  eligible for charity care from St. Joseph.  RCW 19.16.250(29).

8      6.13    Radius's first collection letter *did not* include a notice that Plaintiff was entitled

9  to validation information regarding the medical debt.  RCW 19.16.250(28).

10     6.14    Radius's first collection letter *did not* include a statement informing Plaintiff of

11  her right to request the original account number or redacted original account number assigned

12  to the debt, the date of the last payment, and an itemized statement including: (A) The name

13  and address of the medical creditor; (B) The date, dates, or date range of service; (C) The health

14  care services provided to the patient as indicated by the health care provider in a statement

15  provided to the licensee; (D) The amount of principal for any medical debt or debts incurred; (E)

16  Any adjustment to the bill, such as negotiated insurance rates or other discounts; (F) The

17  amount of any payments received, whether from the patient or any other party; (G) Any

18  interest or fees; and (H) Whether the patient was found eligible for charity care or other

19  reductions and, if so, the amount due after all charity care and other reductions have been

20  applied to the itemized statement. RCW 19.16.250(28).

21     6.15    Radius's January 1, 2020 letter was its initial written communication to Plaintiff

22  and it failed to advise Plaintiff of her right to request validation of the alleged debt as required

23  under 15 U.S.C. § 1692g(a).

24     6.16    Radius did not send Plaintiff any other written notice of her right to request

25  validation of the debt within 5 days of sending her the January 1, 2020 form letter.

26

27

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 6
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

6.17    Plaintiff was confused by the collection letter she received from Radius. Because it referred to care she apparently received more than two years earlier, it was not clear to her what the bill was for. Plaintiff did not know whether she could request charity care to assist with the bill Radius sought to collect. Plaintiff spent approximately 4 (hours) looking through her own records, drafting disputes, and contacting her attorney and providing records to him to determine whether she had to pay the amounts Radius demanded.

6.18    Plaintiff is a truck driver. The time she spent investigating the validity of the amounts Radius demanded could otherwise have been devoted to her work or business development.

6.19    On average, Plaintiff earns approximately $21.00 per hour.

## VII.  CLASS ACTION ALLEGATIONS

7.1    **Class and Subclass Definition**: Plaintiff brings the action under Federal Rule of Civil Procedure 23, on behalf of the following proposed class and subclass:

> **Class**: All Washington residents from whom Radius collected or attempted to collect an alleged debt arising from heath care services provided by a hospital and to whom Radius sent an initial written communication in substantially the same form as Exhibit A, dated July 29, 2019, through the conclusion of this action.

> **FDCPA Subclass**: All members of the Class to whom Radius sent an initial written communication dated October 21, 2019, through the conclusion of this action.

7.2    Plaintiff reserves the ability to revise the proposed Class and Subclass definition if appropriate based on the evidence developed in discovery.

7.3    **Numerosity**: The members of the class are so numerous that joinder of all members is impracticable.

7.4    Radius admits sending letters in substantially the same form as Exhibit A to thousands of Washington residents after July 28, 2019. Dkt. No. 1 at ¶ 21.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 7
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

7.5    **Commonality**: There are questions of law and fact common to Plaintiff and the proposed Class and Subclass, including but not limited to:

7.5.1    Whether Radius sends form initial written communications to Washington consumers who allegedly owe debts for hospital care without advising consumers of the ability to apply for charity care as required under RCW 19.16.250(29).

7.5.2    Whether by violating RCW 19.16.250(29), Radius and its Washington clients who placed alleged debts for hospital care with Radius lost the ability to collect any interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees or charges otherwise legally chargeable to the debtor on such claim under RCW 19.16.450.

7.5.3    Whether the form of the January 1, 2020 letter that Radius sent to Plaintiff was the form of the first written communication Radius sent to Plaintiff and members of the proposed Class and Subclass.

7.5.4    Whether Radius has a practice of sending initial written communications to Washington consumer that fail to provide the validation notice required by 15 U.S.C. § 1692g.

7.5.5    Whether Radius's failure to provide the information required under RCW 19.16.250(28) and (29) is unfair or deceptive under the CPA.

7.5.6    Whether Radius's debt collection occurs in trade or commerce; and

7.5.7    The nature and extent of the class-wide injury and the measure of compensation for such injury.

7.6    **Typicality:** Plaintiff's claims are typical of the claims of the Class and Subclass. They arise out of a common course of conduct by Radius and are based on the same legal and remedial theories. The debt collection practices to which Plaintiff was subjected are materially identical to the debt collection practices Radius utilized in collecting or attempting to collect alleged debts from proposed class members. Radius routinely seeks to collect alleged debts for

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 8
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  healthcare provided by hospitals without providing the charity care disclosures required by

2  Washington law.

3       7.7    **Adequacy of Representation:** Plaintiff is an appropriate representative for the

4  Class and Subclass and will fairly and adequately protect the interests of the Class and Subclass.

5  Plaintiff understands and is willing to undertake the responsibilities of acting in a representative

6  capacity on behalf of the proposed Class and Subclass. Plaintiff will fairly and adequately

7  protect the interests of the Class and Subclass and has no interests that directly conflict with

8  the interests of the Class or Subclass. Plaintiff has retained competent and capable attorneys

9  who are experienced trial lawyers with significant experience in complex and class action

10 litigation, including consumer class actions. Plaintiff and her counsel are committed to

11 prosecuting this action vigorously on behalf of the class and have the financial resources to do

12 so.

13      7.8    **Predominance:** Radius's initial written communications with alleged debtors are

14 form letters sent to thousands of Washington consumers. The common issues regarding the

15 legality of Radius's form letters predominate over any individual issues. Adjudication of these

16 common issues in a single action has important and desirable advantages of judicial economy.

17      7.9    **Superiority:** Plaintiff and members of the Class and Subclass have suffered and

18 continue to suffer harm and damages as a result of Radius's unlawful and wrongful conduct.

19 Absent a class action, however, most Class and Subclass members likely would find the cost of

20 litigating their claims prohibitive. Class treatment is superior to multiple individual suits or

21 piecemeal litigation because it conserves judicial resources, promotes consistency and

22 efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. The

23 members of the Class are readily identifiable from Defendants' records and there will be no

24 significant difficulty in the management of this case as a class action.

25

26

27

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 9
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## VIII.  FIRST CAUSE OF ACTION

**(Violation of the Washington Consumer Protection Act (CPA), RCW 19.86 *et seq.*—**

***per se* violations based on State Collection Agency Act violations)**

8.1     Plaintiff re-alleges all preceding paragraphs as though fully set forth herein.

8.2     Plaintiff and the Class and Subclass members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

8.3     The debts allegedly owed by Plaintiff and Class and Subclass members are each "claims" as defined by RCW 19.16.100(2) because they are "obligation[s] for the payment of money or thing of value arising out of any agreement or contract, express or implied.

8.4     Plaintiff and Class and Subclass members are "debtors" as defined by RCW 19.16.100(7) because Defendants allege that Plaintiff and class members each owe a "claim."

8.5     Radius is a "collection agency" within the meaning of RCW 19.16.100(4)(a) and RCW 19.16.100(4)(d), a licensee within the meaning of RCW 19.16.250, and a person within the meaning of the CPA, RCW 19.86.010(1).

8.6     A collection agency's commission of a practice prohibited by RCW 19.16.250 is a per se unfair or deceptive act or practice occurring in trade or commerce under the CPA. RCW 19.16.440.

8.7     The "Prohibited Practices" section of the WCAA states in pertinent part that "No licensee or employee of a licensee shall:"

> If the claim involves medical debt: (a) Fail to include, with the first written notice to the debtor, a statement that informs the debtor of the debtor's right to request the original account number or redacted original account number assigned to the debt, the date of the last payment, and an itemized statement as provided in (b) of this subsection (28).
>
> The itemized statement referred to in RCW 19.16.250(28)(a) must include:
>
> (A)     The name and address of the medical creditor;
> (B)     The date, dates, or date range of service;
> (C)     The health care services provided to the patient as indicated by the health care provider in a statement provided to the licensee;

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

(D)    The amount of principal for any medical debt or debts incurred;
(E)    Any adjustment to the bill, such as negotiated insurance rates or other discounts;
(F)    The amount of any payments received, whether from the patient or any other party;
(G)    Any interest or fees; and
(H)    Whether the patient was found eligible for charity care or other reductions and, if so, the amount due after all charity care and other reductions have been applied to the itemized statement.

RCW 19.16.250(28).

8.8    Radius's first written notice to Plaintiff and members of the Class failed to include the disclosure required by RCW 19.16.250(28).

8.9    The "Prohibited Practices" section of the WCAA states in pertinent part that "No licensee or employee of a licensee shall:"

If the Claim involves a hospital debt: (a) Fail to include, with the first written notice to the debtor, a notice that the debtor may be eligible for charity care from the hospital, together with the contact information for the hospital.

RCW 19.16.250(29)(a).

8.10    Radius's first written notice to Plaintiff and members of the Class failed to include the notice of potential eligibility for charity care required by RCW 19.16.250(29)(a).

8.11    Radius's unfair or deceptive acts or practices impacted the public interest because they injured Plaintiff and thousands of other persons to whom Radius sent the same letters, and have the capacity to injure hundreds more. RCW 19.86.093. Further, the Washington Supreme Court has explicitly held that "[t]he business of debt collection affects the public interest, and debt collection agencies are subject to strict regulation to ensure they deal fairly and honestly with alleged debtors." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 54, 204 P.3d 885 (2009).

8.12    Plaintiff and other class members were confused by Radius' letter and were injured in their business and property where they were forced to take time away from

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 11
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    otherwise economically productive activities to research whether they owed the amounts

2    Radius claimed for hospital care or when they paid money to Radius.

3    8.13    Radius's unfair or deceptive acts or practices are the direct and proximate cause

4    of Plaintiff and other class members' damages and injuries.

5    8.14    An injunction is necessary to prevent Radius from forcing any more of

6    Washington's neediest citizens to pay any hospital debts that should be reduced or discharged

7    through Washington's Charity Care Act. In addition, an injunction is needed to preclude Radius

8    from collecting any interest, service charge, attorneys' fees, collection costs, delinquency

9    charge, or any other fees or charges otherwise legally chargeable to the debtor on such claims

10    based its violation of RCW 19.16.250. See RCW 19.16.450.

## IX.  SECOND CAUSE OF ACTION

### (Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.*)

13    9.1    Plaintiff re-alleges all preceding paragraphs as though fully set forth herein.

14    9.2    The Fair Debt Collection Practices Act (hereinafter "FDCPA") states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing – 1) the amount of the debt;…3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; 4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and….

24    U.S.C. §1692g(1)(2) and (4).

25    9.3    Radius failed to provide the debt validation notice required by the FDCPA in the

26    January 1, 2020 letter, which was its initial communication with Plaintiff.

27

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 12
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

9.4     Radius's initial written communication with each member of the Subclass was in substantially the same form as the January 1, 2020 letter Plaintiff received and failed to provide the validation notice required by the FDCPA.

9.5     Radius failed to provide the debt validation notice required by the FDCPA in a written communication to Plaintiff or members of the Subclass within five days after its initial communications with Plaintiff and members of the Subclass.

9.6     Under the FDCPA, Plaintiff and the Subclass are entitled to all actual damages and statutory damages of up to $1,000 for Plaintiff and up to 1% of Radius's net worth for the Subclass, along with attorneys' fees and costs. 15 U.S.C. § 1692k.

**X.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the proposed Class be certified under Rule 23 and judgment be entered against Defendant:

A.      For injunctive and declaratory relief:

    i.      declaring Defendant's debt collection practices described in this complaint to be unlawful;

    ii.     prohibiting Defendant from sending letters to collect medical or hospital debt that fail to advise consumers of their potential eligibility for charity care and their validation rights;

    iii.    prohibiting Defendant, or any other person, from attempting to collect more than the amount of the underlying alleged medical debt from Plaintiff and Class members;

B.      For an award to Plaintiff and Class members of actual damages, treble damages, costs and attorneys' fees under RCW 19.86.090;

C.      For an award to Plaintiff and Class members of actual damages, statutory damages, costs, and attorneys' fees under 15 U.S.C. § 1692k; and

D.      For such other and further relief as may be just and equitable.

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 13
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

**XI.  REQUEST FOR TRIAL BY JURY**

Plaintiff hereby requests a trial by jury.

DATED this 22nd day of December, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: Blythe H. Chandler, WSBA #43387
Blythe H. Chandler, WSBA #43387
Email: bchandler@terrellmarshall.com
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray, WSBA #36983
Email: jmurray@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

Robert Mitchell, WSBA #37444
Email: bobmitchellaw@gmail.com
700 Evergreen Boulevard
Vancouver, Washington 98660
Telephone: (360) 993-5000
Facsimile: (888) 840-6003

*Attorneys for Plaintiff*

PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF
WASHINGTON'S CONSUMER PROTECTION ACT AND THE FAIR
DEBT COLLECTION PRACTICES ACT – 14
CASE NO. 3:20-cv-06134-RAJ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

- Exhibit A -

P.O. Box 1259, Dept. #120957
Oaks, PA 19456

**Return Mail Only - Do not send mail to this address**



radius
Radius
Global
Solutions LLC

7831 Glenroy Rd., Suite 250-A
Minneapolis, MN 55439
(855) 974-6118
MONDAY-THURSDAY 8AM-9PM, AND FRIDAY 8AM-5PM
SATURDAY 8AM-12PM
CENTRAL TIME

ANGELA BERNICE CAMPBELL

January 01, 2020
Radius Global Solutions #: 002-▮▮▮▮

**Account(s) in our office:**

**Creditor:**    ST JOSEPH MEDICAL CENTER PARENT LOCATION

| Debt Description: | Account #: | Balance Due: |
|---|---|---|
| SERVICES FOR ANGELA B CAMPBELL 09/18/17 | 115000412 | $77.59 |
| SERVICES FOR ANGELA B CAMPBELL 11/14/17 | 115220484 | $77.59 |

Total Balance Due: $155.18

Dear ANGELA BERNICE CAMPBELL

### TAX SEASON OFFER!

Radius Global Solutions understands how difficult the last year was for some consumers, but now is an opportunity to resolve your outstanding account balance for less than the full balance. You can make a single payment outlined in the offer below:

<u>OFFER</u>: **YOU PAY $108.63**

Your payment must be received in office within 30 days from the date of this letter. Should you fail to complete the arrangement proposed under this option any payments made will be applied to the balance due shown above.

Take advantage of this opportunity by contacting our office and one of our representatives will be happy to accept payment or remit payment with the coupon below. We are not obligated to renew this offer.

You may also contact our office to ask about alternative payment arrangements if you are unable to take advantage of this offer.

Pay Online: www.makethispayment.com using the account information referenced above and pin number 962336.

Pay by Phone: (855) 974-6118

Pay by Mail: Send payments to: Radius Global Solutions P.O. Box 390915 Minneapolis, MN 55439-0915

Sincerely,
Radius Global Solutions

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained shall be used for that purpose. Calls to or from this company may be monitored or recorded.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Pay Online: www.makethispayment.com or detach here and return with payment.

120943-SFC11T070-1078

Date: January 01, 2020
Radius Global Solutions #: 002-▮▮▮▮
**Balance Due:** $155.18
**Offer:** $108.63
Amount Enclosed: $_____

Radius Global Solutions
7831 Glenroy Rd., Suite 250-A
Minneapolis, MN  55439
(855) 974-6118

OFFICE HOURS (CT): MONDAY-THURSDAY 8AM-9PM, FRIDAY 8AM-5PM, AND SATURDAY 8AM-12PM

☐ Check here if your address or phone numbers have changed
Please update changes on reverse side.

Make Payment To:

ANGELA BERNICE CAMPBELL

Radius Global Solutions
P.O. Box 390915
Minneapolis, MN 55439-0915

- Exhibit B -

- Electronic Exparte (3630417) -



17-2-10901-6   53202929   DC        04-29-19

FILED
IN OPEN COURT
EX PARTE DEPARTMENT

APR 2 9 2019

PIERCE CO____, Clerk

By_____ Dep_ty

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**STATE OF WASHINGTON**
**PIERCE COUNTY SUPERIOR COURT**

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 17-2-10901-6 |
| Plaintiff, | CONSENT DECREE |
| v. | |
| FRANCISCAN HEALTH SYSTEM d/b/a CHI-FRANCISCAN HEALTH d/b/a ST. JOSEPH MEDICAL CENTER | |
| Defendant. | |

## I.    JUDGMENT SUMMARY

| | | | |
|---|---|---|---|
| 1.1 | Judgment Creditor: | | State of Washington |
| 1.2 | Judgment Debtor: | | Franciscan Health System |
| 1.3 | Principal Judgment Amount: | | $2,460,000 |
| | | | Restitution pursuant to paragraph IV |
| 1.4 | Post Judgment Interest Rate: | | 12% per annum |
| 1.5 | Attorney for Judgment Creditor: | | Audrey Udashen Assistant Attorney General |
| 1.6 | Attorney for Judgment Debtor: | | Asher Funk Polsinelli PC |
| | | | Brad Fisher Davis Wright Tremaine LLP |

CONSENT DECREE - 1

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1.7    Plaintiff, State of Washington (State), having conducted an investigation and commenced this action pursuant to the Consumer Protection Act, RCW 19.86;

1.8    Defendant, Franciscan Health System (FHS), was served with a Summons and Complaint in this matter;

1.9    The State appears by and through its attorneys, Robert Ferguson, Attorney General, and Audrey Udashen, Assistant Attorney General;

1.10    Defendant appears by and through its attorneys, Asher Funk of Polsinelli PC and Brad Fisher of Davis Wright Tremaine LLP;

1.11    The State and Defendant agree on a basis for the settlement of the matters alleged in the Complaint and to the entry of this Consent Decree against Defendant without the need for trial or adjudication of any issue of law or fact;

1.12    Defendant recognizes and states that this Consent Decree is entered into voluntarily and that no promises or threats have been made by the Attorney General's Office or any member, officer, agent, or representative thereof to induce Defendant to enter into this Consent Decree, except as provided herein;

1.13    Defendant waives any right it may have to appeal from this Consent Decree;

1.14    Defendant further agrees that this Court retains jurisdiction of this action and jurisdiction over this Defendant for the purpose of implementing and enforcing the terms and conditions of this Consent Decree and for all other purposes related to this matter;

The Court finds no just reason for delay.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## II.    GENERAL

2.1    This Court has jurisdiction over the subject matter of this action and over the parties based on the State's claims under the Consumer Protection Act, RCW 19.86.

CONSENT DECREE - 2

- Electronic Exparte (3630417) -

2.2     For purposes of this Consent Decree, the term "Defendant" where not otherwise specified shall mean FHS including the following acute care hospitals: St. Elizabeth Hospital, St. Francis Hospital, Highline Medical Center, Harrison Medical Center, St. Anthony Hospital, St. Clare Hospital, and St. Joseph Medical Center. Certain elements of this Consent Decree apply to one of Defendant's acute care hospitals, St. Joseph Medical Center ("St. Joseph") only. Those elements are specifically identified below.

2.3     Neither this Consent Decree nor the fact of its entry constitutes evidence or an admission by any party regarding the existence or non-existence of any issue, fact, or violation of any law alleged by the State.

2.4     This Consent Decree resolves with prejudice all claims raised and which could have been raised by the State against Defendant, its current and former parents, subsidiaries, affiliates, contractors, vendors, agents (including Conifer Health Solutions, LLC) and successors-in-interest, and the officers, directors, attorneys and employees thereof, pertaining to the acts or omissions described in the Complaint filed in this matter. Upon entry of this Consent Decree, all claims in this matter, not otherwise addressed by the Consent Decree, are dismissed with prejudice.

### III.     INJUNCTIONS

3.1     <u>Application of Injunctions.</u>  The injunctive provisions of this Consent Decree shall apply to Defendant and Defendant's successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant.

3.2     <u>Notice.</u>  Within thirty (30) days from the date of entry of this Consent Decree, Defendant shall inform its successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant,

CONSENT DECREE - 3

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

who are involved in any way with the development, implementation, or maintenance of Defendant's financial assistance program or its financial collections, of the terms and conditions of this Consent Decree and shall direct those persons and entities to comply with this Consent Decree.

3.3  Permanent Injunctions.  Defendant's successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant shall engage in or refrain from engaging in the following acts and practices:

3.3.1  Defendant shall maintain charity care policies and practices that are consistent with the requirements of the Washington Charity Care Act and its implementing regulations, codified at RCW 70.170 and WAC Chapter 246-453, as amended or modified from time to time.  For purposes of this Consent Decree, the terms "charity care" and "financial assistance" shall be used interchangeably.

3.3.2  Defendant shall neither make a statement nor take any action that is likely to give a reasonable patient or financially responsible party ("responsible party") the impression that a patient will not receive medically necessary hospital care unless the patient or responsible party makes a payment of the patient liability portion of the charges, including but not limited to continuing to ask for immediate payment of any amount after the patient has stated a preference to be billed later or an inability to pay.

3.3.3  Defendant shall not represent to any patient or responsible party, directly or indirectly, that they must pay any amount of money in order to apply for financial assistance.

3.3.4  Defendant shall neither make a statement nor take any action that is likely to dissuade a patient or responsible party from receiving information about Defendant's financial assistance program, or from applying for financial assistance.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

3.4    <u>Five Year Injunctions.</u>  For five years from the date of entry of this Consent Decree, Defendant's successors, assigns, officers, agents, directors, managers, servants, employees, contractors, vendors, facilities, affiliates, clinics, providers, subsidiaries, subparts, representatives, and all other persons or entities in active concert or participation with Defendant shall engage in or refrain from engaging in the following acts and practices:

3.4.2    Defendant shall develop and implement policies and procedures to ensure that it reasonably complies with the following requirements.

3.4.2.1    When conducting any pre-treatment process in which patients' liability portions are identified or payment is requested from patients or responsible parties, including registration or financial clearance processes conducted after a medical screening examination, or when contacting patients for payment information after the patient receives unscheduled, urgent, or emergency care, Defendant shall do the following before asking patients to pay charges for medically necessary hospital care not covered by third-parties (including but not limited to copayments, coinsurance, and deductibles): (1) inform the patient or responsible party orally that financial assistance is available to those who qualify; (2) provide the patient or responsible party with Defendant's plain language summary ("PLS") of its financial assistance program, or if the contact occurs over the telephone, direct the patient or responsible party to the location (URL) on Defendant's website where the PLS can be found; and, (3) ask the patient or responsible party if they would like to explore their potential eligibility for financial assistance.

3.4.2.2    If a patient or responsible party indicates an interest in financial assistance, or at any time expresses an inability to pay all or part of their liability, if the patient is at the site of care, Defendant shall provide the patient with a financial assistance packet in hard copy and refer the patient to personnel who can assist the patient in filling out the application or applying for third-party coverage.  If the patient is not at the site of care, Defendant shall refer the patient or responsible party to the financial assistance information and application on its website, provide the website URL, and provide phone numbers of staff who can assist the

CONSENT DECREE - 5

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1   patient.  Defendant shall also offer to mail or e-mail a copy of the financial assistance packet to

2   the patient or responsible party before the patient's scheduled procedure.

3                           3.4.2.2.1    An expression of an inability to pay from a patient or

4   a responsible party shall include, but not be limited to: (1) a representation that they are unable

5   to pay or may experience difficulty paying for some or all of the patient responsibility portion

6   of the cost of the care; (2) informing Defendant of apparent grounds for presumptive eligibility,

7   such as receipt of means-tested public benefits or homelessness, or Defendant's independent

8   observation of apparent grounds for presumptive eligibility; or (3) any other conduct or activity

9   which is set forth in FHS's published financial assistance policy, as approved by the Washington

10  State Department of Health.

11                          3.4.2.2.2  The  financial  assistance  packet  shall  consist  of

12  Defendant's PLS, an application for financial assistance, the URL for Defendant's website with

13  information on its financial assistance program, the URL for the U.S. Dept. of Health & Human

14  Services' current Federal Poverty Guidelines, and contact information for Defendant's financial

15  counselors.

16                          3.4.2.3   If a patient or responsible party expresses an interest in financial

17  assistance or an inability to pay at any time during an interaction, Defendant shall thereafter

18  refrain from requesting payment for medically necessary hospital care in any amount during that

19  interaction with the patient and shall follow the procedure set forth in Section 3.4.2.2.

20                          3.4.2.4   Defendant may provide the patient or responsible party with

21  information about the amount of the patient's financial responsibility, even if the patient has

22  expressed an interest in financial assistance or an inability to pay, as long as Defendant clearly

23  identifies  the  information  as  being  solely  for  the  purpose  of  providing  the  patient  with

24  information, and not for the purposes of seeking or demanding payment.  If a patient has not

25  expressed an interest in financial assistance or an inability to pay, Defendant may provide such

26  information and request payment of the patient's financial responsibility during that interaction.

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

3.4.2.5    Defendant's patient financial counselors shall make reasonable efforts to contact a patient who requests information about financial assistance or expresses an inability to pay no later than five (5) business days after the patient's date of service.  Such contact will be in-person if the patient remains in the hospital, or by phone before admission (for pre-scheduled patients), or after discharge for patients who the financial counselor is unable to meet with while they are present at the hospital.  If Defendant is unable to reach the patient in-person or by phone, Defendant will contact the patient by mail at the address it has on file, and request that the patient call Defendants' patient financial counselors to discuss possible financial assistance.

3.4.2.6    Defendant's patient financial counselors shall ask patients if they need translation or interpretation services to assist them in applying for third-party coverage or financial assistance.  Defendant shall provide translation or interpretation services for patients who require such services in accordance with applicable law.

3.4.2.7    For patients who have expressed an interest in financial assistance or an inability to pay, Defendant's patient financial counselors will make reasonable efforts to collect information about a patient's family size and household income to assist Defendant in determining the patient's potential eligibility for third-party sponsorship and financial assistance.  Defendant's patient financial counselors will also provide an overview of Defendant's financial assistance program, as appropriate.

3.4.2.8    A patient may request information about financial assistance from Defendant, or express an inability to pay all or part of their liability after receiving care.  Within seven (7) days after receiving such request, Defendant shall mail the patient a financial assistance packet to the address it has on file, and shall thereafter make an attempt to contact the patient by phone at the phone number it has on file.

3.4.2.9    No billing or collection activity shall be directed towards a patient or responsible party who has requested information about financial assistance or

CONSENT DECREE - 7

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  expressed an inability to pay for fourteen (14) days after Defendant receives such information or

2  expression. If the patient's medical condition or other factors indicate that the patient will require

3  more time to secure and present documentation to Defendant for Defendant to make a final

4  determination of eligibility for financial assistance, Defendant will extend this time period as

5  reasonably necessary.

6        3.4.2.10   If a patient or responsible party submits a complete charity care

7  application, Defendant shall refrain from engaging in billing or collection activity directed

8  towards the patient or the responsible party until the time the patient's charity care application

9  is processed.

10        3.4.2.11   If a patient or responsible party submits an incomplete financial

11  assistance application, Defendant shall contact the patient by mail and describe the missing

12  documentation needed to complete the application.  Defendant shall refrain from engaging in

13  billing or collection activity directed towards the patient or the responsible party for fourteen

14  (14) days after the letter is mailed.  During this time, if Defendant has not received the missing

15  documentation, Defendant's personnel shall call the patient or responsible party at the phone

16  number Defendant has on file. If Defendant receives documents from the patient or responsible

17  party that complete their charity care application, Defendant shall follow the procedure set forth

18  in Section 3.4.2.10.

19        3.4.2.12   Defendant may bill and collect from any third-party coverage

20  that may be available for the patient at any time after the care is provided.

21        3.4.2.13   Defendant shall continue to extend charity care to patients with

22  income less than or equal to 300% of the Federal Poverty Guidelines.

23        3.4.3   Defendant shall request that Wellfound Behavioral Health, an inpatient

24  behavioral health hospital, jointly owned and operated by Defendant and MultiCare Health

25  System maintain charity care eligibility criteria no less generous than those in effect at

26  Wellfound at the time of the entry of this Consent Decree.

CONSENT DECREE - 8

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

3.4.4   If changes are made to RCW 70.170, WAC 246-453 or any other Washington State statute or regulation relating to hospitals' charity care programs such that compliance with any provision of paragraphs 3.4.2.1 through 3.4.2.13 is no longer consistent with Washington state law, Plaintiff and Defendant shall meet and confer regarding the amendment or dissolution of these terms.   If Plaintiff and Defendant cannot agree to the modification or dissolution of these terms, either party may petition this Court, with notice and opportunity to be heard by the opposing party, for modification of these injunctive terms.

3.4.5   Defendants shall ensure that biannual trainings take place for all staff members whose job responsibilities include conducting pre-registration, financial clearance, point-of-service registration, collection of payment, or financial counseling services, whether employed by Defendant, its vendors or agents, on the requirements of this Consent Decree and Washington State charity care requirements.

3.4   _Reporting._    For twenty four (24) months from the entry of this Consent Decree, St. Joseph shall provide annual reports to the State, which include the following information:

3.4.1   Identification of the amount of charity care St. Joseph provided during the prior twelve (12) months and the number of recipients of charity care during that time period.

3.4.2   Identification of the date, time, and place of any training provided to staff members, whether they are employed by St. Joseph or its agents, related to charity care or upfront collection and copies of any materials utilized at these trainings.

3.4.3   Copies or photographs of all notices relating to charity care posted in any location at St. Joseph, along with an identification of the location of the sign.

3.4.4   Copies of all materials distributed to patients relating to charity care.

## IV.    RESTITUTION

4.1   Pursuant to RCW 19.86.080, Defendant will take the following steps to make restitution to its patients.

4.2   Within one hundred twenty (120) days of the entry of this Consent Decree,

CONSENT DECREE - 9

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

1  Defendant shall: (a) discharge any outstanding account balances for Uninsured Patients who
2  received care at one of Defendant's acute care hospitals between January 1, 2012 and July 1,
3  2017, and who meet the Trans Union LLC community or credit-based criteria indicating that the
4  patient had an estimated income of less than 200% of the Federal Poverty Guidelines ("FPG"),
5  and; (b) issue the Payment Refunds (as defined below) to Uninsured Patients.[1]

6      For the purposes of this Consent Decree "Uninsured Patients" shall mean those patients
7  who received care at Defendant's acute care hospitals, and lacked any source of third-party
8  sponsorship, including but not limited to commercial or governmental insurance, coverage under
9  any state program including Worker's Compensation, PIP, or Crime Victim's benefits, or
10  received a settlement or judgment from a tortfeasor that includes damages based on the patient's
11  medical expenses, including medical expenses incurred in receiving medically necessary
12  hospital care.

13      For the purposes of this Consent Decree "Payment Refunds" shall mean: (i) the full
14  refund of any prior payments for care at one of Defendant's acute care hospitals between January
15  1, 2012 and July 1, 2017, made by an Uninsured Patient who meets the Trans Union LLC
16  community or credit-based criteria indicating that the patient had an estimated income of less
17  than 100% of the FPG, and; (ii) a 40% refund of any prior payments made between January 1,
18  2012 and July 1, 2017, for care at St. Joseph Medical Center, Harrison Medical Center and
19  Highline Medical Center, or a 25% refund of any prior payments made between January 1, 2012
20  and July 1, 2017 for care at St. Elizabeth Hospital, St. Francis Hospital, St. Anthony Hospital,
21  and St. Clare Hospital, by an Uninsured Patient who meets the Trans Union LLC community or
22  credit-based criteria indicating that the patient had an estimated income of between 101% and
23  200% of the FPG. The partial refund amounts set forth above (e.g. 40% and 25%) shall be
24  applied at the individual account level.

25  _____
[1] Franciscan Health System acquired Highline Medical Center on April 1, 2013 and Harrison Medical Center on
26  August 1, 2013 (collectively the "Affiliation Dates"). Accordingly, any discharge or refunds to patients who sought
care at those facilities will be limited to the timeframe of the Affiliation Dates through July 1, 2017.

CONSENT DECREE - 10

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

4.2.1    The receipt of a discharge or refund pursuant to this paragraph shall not limit a patient's right to apply for charity care for any accounts not refunded or discharged pursuant to this Consent Decree.

4.2.2    Within thirty (30) days of discharging an eligible account, Defendant shall transmit the correspondence attached as Exhibit A to the patient receiving the discharge at the address Defendant has on file for the patient, by US mail, first class.  The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.  This correspondence shall identify the amount discharged and the account number(s) associated with the discharged accounts.

4.2.3    Defendant shall transmit refunds to patients by check, payable to each patient at the address Defendant has on file for the patient. The refund check shall be accompanied by the correspondence attached as Exhibit B.  The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.

4.2.3.1 Defendant shall not be responsible for locating patients who no longer reside at the last known address that Defendant has on file.

4.2.3.2 If any check issued pursuant to 4.2.3 is returned to sender, or is not cashed before it becomes invalid or expired, an amount equal to the check will be sent to the Washington State Department of Revenue ("Department of Revenue") according to its usual protocol for the disposition of unclaimed property.

4.2.3.3 If an intended recipient of an unclaimed, expired check contacts Defendant and requests that a check be sent to an address other than the one on file with the Defendant at any time prior to Defendant sending the check to the Department of Revenue, Defendant shall resend the check to the address provided by the patient.

CONSENT DECREE - 11

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

4.3    Within ninety (90) days of the entry of this Consent Decree, Defendant shall transmit the correspondence attached as Exhibit C to all Uninsured Patients who received care at any of its facilities between 2012 and 2017.  The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General.  The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.

4.4    Within ninety (90) days of the entry of this Consent Decree, St. Joseph shall transmit the notice attached as Exhibit C to all patients it treated between 2012 to 2017 who were: (1) treated in or admitted through its emergency department; (2) who had a Medicare Fee-For-Service plan but did not have a Medicare supplement plan; and (3) all Medicaid-insured patients treated in St. Joseph's behavior health unit. The envelope containing the correspondence shall indicate that it a notice from the Office of the Attorney General. The Office of the Attorney General shall reimburse Defendant for the expenses incurred in creating and printing such envelopes.

4.5    St. Joseph will post notice of the settlement in public areas of its facilities, including (1) areas where patients are admitted or registered; (2) the emergency department; and (3) financial service or billing areas accessible to patients.  Such notice shall be subject to the State's approval.

4.6    St. Joseph will post additional, easy-to-view information on its website and on its social media accounts concerning the availability of financial assistance and how it can be obtained. Such notices shall be subject to the State's approval.

4.7    St. Joseph shall notify patients of this Consent Decree and of their right to apply for charity care through Tacoma-area media outlets, including newspapers, magazines, and radio stations.  These outlets shall include Spanish-language publications and outlets.  Such notice shall: (1) inform patients of the settlement between St. Joseph and the State; (2) explain that all patients have the right to apply for charity care for the patient responsibility portion of paid and

CONSENT DECREE - 12

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

1  unpaid accounts at St. Joseph; (3) provide contact information for St. Joseph's Financial

2  Counselors; and, (4) direct patients to a website that includes the PLS of St. Joseph's charity care

3  program and a copy of St. Joseph's charity care application.

4      4.7.1    Defendant shall provide at least ten (10) notices of the settlement through

5  media outlets within ninety (90) days of the entry of the Consent Decree.

6      4.7.2    Defendant shall provide the State with a list of media outlets it will use to

7  provide notice of the settlement within thirty (30) days of the entry of the Consent Decree. This

8  list shall be subject to the State's approval.

9      4.7.3    Defendant shall provide copies of the content of the notices it will provide

10  through media outlets, whether in written or oral form, to the State. The content of these notices

11  shall be subject to the State's approval.

12      4.8    St. Joseph will conduct education and outreach through community and social

13  services organizations that have contact with or serve patients within St. Joseph's primary

14  service area that may qualify for financial assistance. St. Joseph will hold live meetings, whose

15  primary purpose will be to inform community members about the availability of financial

16  assistance at St. Joseph for current and prior services, as well as the support that is available

17  during the application process, including interpreters. St. Joseph is permitted to use video or

18  pre-recorded media during the education and outreach sessions, so long as a St. Joseph

19  representative is present at the sessions to greet attendees and answer questions. St. Joseph will

20  hold such meetings at the following organizations: Project Access of Pierce County, Lutheran

21  Community Services, Aging and Disability Resources, South Sound Outreach, the Tacoma

22  Urban League, and one organization that primarily serves Spanish-speaking individuals.

23      4.8.1    St. Joseph will conduct at least one live meeting at each organization

24  identified above within six (6) months of the entry of the Consent Decree.

25      4.8.2    St. Joseph will work with the organizations identified above to publicize

26  the live meetings within the community served by each organization.

CONSENT DECREE - 13

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

4.8.3   St. Joseph will distribute written materials regarding its charity care program at each of these meetings.

4.8.4   St. Joseph will inform the State of the date, time, and location of these meetings at least one (1) month in advance of their occurrence.

4.9   Defendant shall extend charity care to Uninsured Patients for the patient responsibility portion of paid and unpaid accounts who received care at any of Defendant's acute care hospitals between 2012 and 2017.  Those patients may either: (i) complete the attestation form included with Exhibit C, or (ii) submit a charity care application demonstrating that their household income was at or below 200% of the Federal Poverty Guidelines at the time of their treatment or the time of the submission of their charity care application, provided that the submission is within two (2) years of the date of service.  Defendant shall refund any payments or discharge any amounts owing on the accounts of patients approved for charity care.

4.9.1   Within thirty (30) days of discharging an eligible account, Defendant shall transmit the correspondence attached as Exhibit A to the address the Defendant has on file for the patient.  This correspondence shall identify the amount discharged and the account number(s) associated with the discharged accounts.

4.9.2   Defendant shall transmit refunds to patients by check, payable to each patient at the address Defendant has on file for the patient.   The refund check shall be accompanied by the correspondence attached as Exhibit B.

4.9.2.1   Defendant shall not be responsible for locating patients who no longer reside at the last known address that Defendant has on file.

4.9.2.2   If any check issued pursuant to 4.9 is returned to sender, or is not cashed before it becomes invalid or expired, an amount equal to the check will be sent to the Department of Revenue according to its usual protocol for the disposition of unclaimed property.

4.9.2.3   If an intended recipient of an unclaimed, expired check contacts Defendant and requests that a check be sent to an address other than the one on file with the

CONSENT DECREE - 14

1   Defendant at any time prior to Defendant sending the check to the Department of Revenue,

2   Defendant shall resend the check to the address provided by the patient.

3           4.9.3  If Defendant reported any accounts discharged or refunded pursuant to this

4   Section 4.9 as delinquent, charged off, or as bad debt to any credit reporting agencies ("CRAs"),

5   Defendant shall report the account as paid in full to the CRAs and request the deletion of any

6   associated trade lines reflecting the account as delinquent, defaulted, charged off, or bad debt

7           4.9.4  Consistent with the Washington Charity Care Act and its implementing

8   regulations, codified at RCW 70.170 and WAC Chapter 246-453, as amended or modified,

9   Defendant shall allow any patients who received care at one of its acute care hospitals between

10  2012 and 2017 to apply for financial assistance through Defendant's ordinary process, by

11  submitting a financial assistance application.

12          4.10   Within six (6) months of the entry of this Consent Decree, Defendants shall

13  provide a report to the State which identifies (i) the number of patients it issued refunds to

14  pursuant to this Consent Decree; (ii) the amount of these refunds; (iii) the number of patients

15  whose accounts were discharged pursuant to this Consent Decree; and, (iv) the amount of these

16  discharges.

17          4.11   Defendant may, at its option and expense, retain a qualified third party contractor

18  to assist with the obligations set forth in 4.2, 4.3 and 4.4 of this Consent Decree.

19                          **V.    MONETARY PAYMENT**

20          5.1    Pursuant to RCW 19.86.080, Defendant shall pay the State the amount of

21  $2,460,000.  The Attorney General shall use the funds for recovery of its costs and attorneys'

22  fees in investigating this matter, future monitoring and enforcement of this Consent Decree,

23  future enforcement of RCW 19.86, or for any lawful purpose in the discharge of the Attorney

24  General's duties at the sole discretion of the Attorney General.

25

26

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7745

- Electronic Exparte (3630417) -

5.1.1   The Attorney General's Office shall use or distribute at least $100,000 of this payment to provide public education and outreach related to the availability of charity care in Washington State at the sole discretion of the Attorney General.

5.2   Payment owing under this provision shall be in the form of a valid check paid to the order of the "Attorney General—State of Washington" and shall be due and owing within thirty (30) days of the entry of the Consent Decree.  Payment shall be sent to the Office of the Attorney General, Attention:  Margaret Farmer, Administrative Office Manager, 800 Fifth Avenue, Suite 2000, Seattle, Washington 98104-3188.

5.3   Defendant's failure to timely make payments as required by this Consent Decree by the date of entry of this Consent Decree, without written agreement by the State, shall be a material breach of this Consent Decree.

## VI.   ENFORCEMENT

6.1   Violation of any of the injunctions contained in this Consent Decree, as determined by the Court, shall subject the Defendants to a civil penalty of not more than $25,000 per violation pursuant to RCW 19.86.140.

6.2   Violation of any of the terms of this Consent Decree, as determined by the Court, shall constitute a violation of the Consumer Protection Act, RCW 19.86.020.

6.3   This Consent Decree is entered pursuant to RCW 19.86.080. Jurisdiction is retained for the purpose of enabling any party to this Consent Decree with or without the prior consent of the other party to apply to the Court at any time for enforcement of compliance with this Consent Decree, to punish violations thereof, or to modify or clarify this Consent Decree.

6.4   Representatives of the Office of the Attorney General shall be permitted, upon advance written notice of twenty (20) days to Defendant, to access, inspect and/or copy non-privileged business records or documents in possession, custody or under control of Defendant (Business Records) to monitor compliance with this Consent Decree, provided that the inspection and copying shall avoid unreasonable disruption of Defendant's business activities.

CONSENT DECREE - 16

- Electronic Exparte (3630417) -

1    The State of Washington shall not disclose any Business Records unless such disclosure is

2    required by law. In the event that a representative of the Office of the Attorney General receives

3    a request under the Public Records Act, subpoena, or other demand for production that seeks the

4    disclosure of Business Records, the Office of the Attorney General shall notify Defendant as

5    soon as practicable and in no event more than thirty (30) calendar days after receiving such

6    request and shall allow Defendant a reasonable time, not less than ten (10) calendar days, from

7    the receipt of such notice to seek a protective order relating to the Business Records or to

8    otherwise resolve any disputes relating to the production of the Business Records before

9    Washington discloses any Business Records. Nothing in this Consent Decree shall affect State

10   of Washington's compliance with the Public Records Act, RCW 42.56.

11       6.5    To monitor compliance with this Consent Decree, the State shall be permitted to

12   serve interrogatories pursuant to the provisions of CR 26 and CR 33 and to question Defendant

13   or any officer, director, agent, or employee of Defendant by deposition pursuant to the provisions

14   of CR 26 and CR 30 provided that the State attempts in good faith to schedule the deposition at

15   a time convenient for the deponent and his or her legal counsel.

16       6.6    This Consent Decree in no way limits the Office of the Attorney General, or any

17   other state agency, from conducting any lawful non-public investigation to monitor Defendant's

18   compliance with this Consent Decree or to investigate other alleged violations of the CPA which

19   may include but is not limited to interviewing customers or former employees of Defendant.

20       6.7    Nothing in this Consent Decree shall be construed as to limit or bar any other

21   governmental entity or consumer from pursuing other available remedies against Defendant

22   beyond any limits or bars otherwise applicable by operation of law.

23       6.8    Under no circumstances shall this Consent Decree or the name of the State of

24   Washington, the Office of the Attorney General, Consumer Protection Division, or any of their

25   employees or representatives be used by Defendant in connection with any selling, advertising,

26

CONSENT DECREE - 17

1  or promotion of products or services, or as an endorsement or approval of Defendant's acts,

2  practices or conduct of business.

3    6.9    This Consent Decree shall be binding upon and inure to the benefit of Defendant's

4  successors and assigns.   Defendant and its successors and assigns shall notify the Attorney

5  General's Office at least thirty (30) days prior to any change-in-control of Defendant that would

6  change the identity of the corporate entity responsible for compliance obligations arising under

7  this Consent Decree, including but not limited to dissolution, assignment, sale, merger, or other

8  action that would result in the emergence of a successor corporation; the creation or dissolution

9  of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the

10  proposed filing of a bankruptcy petition; or a change in the corporate name or address.  Provided,

11  however, that with respect to any proposed change in the corporation about which Defendant

12  and its successors and assigns learn less than thirty (30) days prior to the date such action is to

13  take place, Defendant and its successors and assigns shall notify the Attorney General's Office

14  as soon as is practicable after obtaining such knowledge.

15    6.10    Any notice or other communication required or permitted under this Consent

16  Decree shall be in writing and delivered to the following persons or any person subsequently

17  designated by the parties:

18    For the State of Washington:              For Defendants:

19    Office of the Attorney General            CHI Franciscan
20    Consumer Protection Division              Corporate Office
      Attention:  Audrey Udashen, AAG          1145 Broadway Plaza, Suite 1200
21    800 Fifth Avenue, Suite 2000             MS 07-00
      Seattle, WA 98104-3188                   Tacoma, WA  98402
22                                             Attn:  Chief Executive Officer

23

24                                             With a copy to:

25                                             CHI Franciscan
26                                             Corporate Office

CONSENT DECREE - 18                          ATTORNEY GENERAL OF WASHINGTON
                                             Consumer Protection Division
                                             800 Fifth Avenue, Suite 2000
                                             Seattle, WA 98104-3188
                                             (206) 464-7745

- Electronic Exparte (3630417) -

0056

514

4/29/2019

1                             1145 Broadway Plaza, Suite 1200
2                             MS 07-00
3                             Tacoma, WA 98402
                                Attn: Regional General Counsel

4       6.11    The Clerk of Court is ordered to enter the foregoing Judgment and Consent

5 Decree immediately.

6       DONE IN OPEN COURT this _29_ day of _APRIL_ , 2019.

7

8

9                             JUDGE/COURT COMMISSIONER

10                                     IN OPEN COURT
                                  EX PARTE DEPARTMENT

11

12 Approved for entry and presented by:        Approved for Entry, Notice of    APR 2 9 2019
                                           Presentation Waived:      PIERCE COUNTY, Clerk

13 ROBERT W. FERGUSON                            By_____ Deputy
14 Attorney General

15

16 AUDREY L. UDASHEN, WSBA #42868      ASHER D. FUNK, pro hac vice
17 Assistant Attorney General                  Polsinelli PC
    Attorney for Plaintiff State of Washington

18                                        BRAD FISHER, WSBA #19895
                                          REBECCA J. FRANCIS, WSBA #41196
19                                       Davis Wright Tremaine LLP

20                                         Attorneys for Defendant Franciscan
                                        Health Systems d/b/a CHI-Franciscan
21                                         Health d/b/a St. Joseph Medical Center

22 Washington State Department of Health

23

24 KELSEY L. MARTIN, WSBA #50296
25 Assistant Attorney General
    Attorney for the Washington State Department of Health
26

CONSENT DECREE - 19                              ATTORNEY GENERAL OF WASHINGTON
                                                    Consumer Protection Division
                                                    800 Fifth Avenue, Suite 2000
                                                    Seattle, WA 98104-3188
                                                    (206) 464-7745

- Electronic Exparte (3630417) -

# EXHIBIT A

- Electronic Exparte (3630417) -



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue • Suite 2000• MS TB 14 • Seattle WA  98104-3188
(206) 464-7745

## Good news - you no longer owe a debt!

Dear Patient:

The Attorney General's Office protects all Washingtonians from unfair and deceptive business practices. My team and I work hard to hold businesses accountable and obtain justice for Washingtonians when businesses don't play by the rules.

My office filed a lawsuit against St. Joseph Medical Center alleging that it failed to make financial assistance accessible to low-income patients from 2012 to 2017.  My office and St. Joseph Medical Center's parent company, CHI Franciscan, recently entered into an agreement to settle this lawsuit. A copy of the settlement is available here: [insert link to Consent Decree].

As part of the settlement, CHI Franciscan can no longer collect on certain accounts owed to it by thousands of charity care eligible patients treated at its Washington hospitals.  You are a member of this group.

**As a result, you no longer owe [amount discharged] on [account number(s)] to [insert hospital name(s)].**

 If you have questions about this letter or CHI Franciscan's charity care program please contact (888) 779-6380.

Sincerely,

BOB FERGUSON
Attorney General

RWF/jlg
Enclosures

- Electronic Exparte (3630417) -

0059

514

4/29/2019

# EXHIBIT B

- Electronic Exparte (3630417) -



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
**Error! Not a valid result for table.**

### Good news – refund enclosed!

Dear Patient:

The Attorney General's Office protects all Washingtonians from unfair and deceptive business practices. My team and I work hard to hold businesses accountable and obtain justice for Washingtonians when businesses don't play by the rules.

My office filed a lawsuit against St. Joseph Medical Center alleging that it failed to make financial assistance accessible to low-income patients from 2012 to 2017. My office and St. Joseph Medical Center's parent company, CHI Franciscan, recently entered into an agreement to settle this lawsuit. A copy of the settlement is available here: [insert link to Consent Decree].

As part of the settlement, CHI Franciscan owes you money. Specifically, CHI Franciscan must refund money paid by patients who were eligible for financial assistance but did not get it. Thanks to the efforts of my team, you are receiving the enclosed check because you meet this criteria and are eligible for a refund.

If you have questions about this letter or CHI Franciscan's charity care program please contact (888) 779-6380.


Sincerely,

BOB FERGUSON
Attorney General

RWF/jlg
Enclosures

- Electronic Exparte (3630417) –

# EXHIBIT C

- Electronic Exparte (3630417) -



**Bob Ferguson**
# ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue • Suite 2000• MS TB 14 • Seattle WA 98104-3188
(206) 464-7745

**ACT NOW! You may be eligible for a refund or forgiveness of medical debt.**

Dear Patient:

The Attorney General's Office protects all Washingtonians from unfair and deceptive business practices. My team and I work hard to hold businesses accountable and obtain justice for Washingtonians when businesses don't play by the rules.

My office filed a lawsuit against St. Joseph Medical Center alleging that it failed to make financial assistance accessible to low-income patients from 2012 to 2017. My office and St. Joseph Medical Center's parent company, CHI Franciscan, recently entered into an agreement to settle this lawsuit. A copy of the settlement is available here: [insert link to Consent Decree].

This settlement allows patients who were qualified financial assistance to receive a refund or forgiveness of debt for care provided to them from 2012-2017 at the following hospitals: St. Joseph Medical Center, St. Elizabeth Hospital, St. Francis Hospital, Highline Medical Center, Harrison Medical Center, St. Anthony Hospital, and St. Clare Hospital.

**Here is what you need to do to see if you are eligible for a refund or debt forgiveness:**

- Consult the enclosed chart to see if your family income at the time you received treatment qualifies you for financial assistance; and
- If so, please return the enclosed form to be considered for financial assistance.

**We are working hard to make sure every eligible patient receives a refund and debt forgiveness, but we need you to act now!**

If approved for financial assistance, you will receive a refund of what you paid to CHI Franciscan hospitals. You will also be notified of any amount you no longer owe to CHI Franciscan hospitals.

If you have questions about this letter or CHI Franciscan's charity care program please contact (888) 779-6380.

Sincerely,

BOB FERGUSON
Attorney General

68325141.1

- Electronic Exparte (3630417) -

## CHI Franciscan - Attestation of Eligibility For Financial Assistance

Patient's Full Name: _____

Patient's Date of Birth: _____

Full Name of Responsible Party (If Not The Patient): _____

Relationship of Responsible Party to Patient: _____

Approximate Date(s) of Treatment: _____

Hospital Where Treatment Was Received: _____

Contact Phone Number: _____

Contact Email (optional): _____

Contact Mailing Address: _____

---

*By signing this document and requesting that CHI Franciscan provide me with financial assistance for medical treatment, I affirm and represent the following:*

- The information I have provided above is true and correct to the best of my knowledge.

- The patient listed above received medical treatment at St. Elizabeth Hospital (Enumclaw), St. Francis Hospital (Federal Way), Highline Medical Center (Burien), Harrison Medical Center (Bremerton / Silverdale), St. Anthony Hospital (Gig Harbor), St. Clare Hospital (Lakewood), or St. Joseph Medical Center (Tacoma) between January 1, 2012 and December 31, 2017.

- The household income of the patient or responsible party at the time of treatment was less than or equal to 200% of the 2017 Federal Poverty Guidelines, as set by the U.S. Department of Health & Human Services (see attached table).

_____         _____

Signature of Patient or Responsible Party              Date

**Mail or fax to: St. Joseph Medical Center, 1717 South J Street, MS 10-30, Tacoma, WA 98405. Fax (253) 396-6746. Please call (888) 779-6380 with any questions.**

68325141.1

- Electronic Exparte (3630417) -

**Your Income Must Be Less Than or Equal to the Amounts in the Chart Below to Qualify for Financial Assistance**

| 200% of The Federal Poverty Guidelines - 2017 | |
|---|---|
| **Household / Family Size** | **Annual Household Income Must Be Less Than or Equal To:** |
| 1 | $24,120 |
| 2 | $32,480 |
| 3 | $40,840 |
| 4 | $49,200 |
| 5 | $57,560 |
| 6 | $65,920 |
| 7 | $74,280 |
| 8 | $82,640 |
| For families/households with more than 8 persons, add $8,360 for each additional person. | |

68325141.1